```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       WESTERN DIVISION


BEATRICE CHATMAN                                        PLAINTIFF

VS.                        CIVIL ACTION NO. 5:14-cv-102(DCB)(MTP)

ZIMMER, INC.,
ZIMMER HOLDINGS, INC.,
and ZIMMER ORTHOPAEDIC
SURGICAL PRODUCTS, INC.                                DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendant's[1] motion for summary judgment **(docket entry 34)**, and on the defendant's motion in limine **(docket entry 43)**. Having carefully considered the parties' briefs and the applicable law, the Court finds as follows:

This is a personal injury/products liability case in which the plaintiff, Beatrice Chatman ("Chatman"), claims she suffered personal and economic injuries as a result of implantation of a Zimmer NexGen Knee device known as "Zimmer NexGen System, Posterior Stabilized Knee with Cement Components." Complaint, ¶ 9. Chatman alleges the device was implanted in her right knee on April 5, 2006, she began suffering injuries as a result of the implantation in June of 2013, and she underwent revision surgery on June 24, 2013. Complaint, ¶¶ 8-11. She claims damages for injury to herself, economic loss, medical expenses (past and future), costs for rehabilitation, permanent disability and/or home healthcare.

---

[1] The Court refers to the corporate defendants collectively as "Zimmer" or "the defendant."

Complaint, ¶ 15.

The defendant moves for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If the moving party carries its burden of showing that evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim, the burden shifts to the nonmoving party to present evidence showing that there is a genuine issue for trial. Norwegian Bulk Transp. A/S v. International Marine, 520 F.3d 409, 412 (5th Cir. 2008).

The defendant moves for summary judgment on grounds that Chatman has failed to provide an expert report or identify an expert who can speak to the alleged defect and medical causation; therefore, she has no evidence, expert or otherwise, to support essential elements of her claims. Further, Zimmer contends that it has served reports from its own experts, Dr. Thomas Baier and Dr. Steven Kurtz, opining that Chatman's Zimmer knee replacement components are not defective and that she has suffered no injury caused by her knee replacement components. Motion for Summary Judgment, p. 1.

2

In response, the plaintiff alleges that she can prove her case by relying on her own accounting of the events, records from her treating physicians, and a recall notice from the Food and Drug Administration ("FDA"). Response, p. 1. Specifically, she asserts that an X-ray of her right knee in June of 2013 showed loosening of the femoral component and loosening of the fibular component, which had collapsed into the varus which gave the plaintiff a significant amount of instability. Response, p. 2. During the revision surgery on June 24, 2013, Dr. Rabalais reported that Chatman's laboratory values were all normal, indicating there was no infection. Dr. Rabalais diagnosed a Failed Right Knee Total Arthroplasty. Response, p. 3. The plaintiff continued to complain of pain in her right knee, and Dr. Rabalais performed a right knee scope (arthroscopy) on December 12, 2014. The scope revealed that she had developed a significant amount of patellafemoral crepitus, and a large amount of synovitis and scar tissue in the superior pole of the patella. Dr. Rabalais did a shaving and cleaned out the extra scar tissue in the superior pole of the patella, as well as the inferior pole of the patella and the medial gutters. Id. The plaintiff also complained of depression accompanying her severe pain in the right knee, as indicated in her medical records, and she was given medication. Id.

In support of her products liability claim, the plaintiff refers to a September 13, 2010, FDA Class 2 Recall of the NexGen

Complete Knee Solution MIS Tibial Components, Locking Screw and Stem Extensions, stating that the FDA's reason for the recall was the receipt of complaints of loosening of the implanted device requiring revision surgery. Response, p. 7.

In its Rebuttal, the defendant states that the Class 2 Recall by the FDA is irrelevant to any claim being made in this lawsuit, inasmuch as the recalled product (the NexGen Complete Knee Solution MIS Tibial Component (REF 00-5950-027-02)) is not the product that the plaintiff received. Because the plaintiff's case involves an entirely different product than that in the Recall Notice, the plaintiff's citation to cases discussing the admissibility of substantially similar circumstances in accidents involving cranes and hanging meat trailers are not apropos and do not serve to further the plaintiff's argument. See Mitchell v. Fruehauf Corp., 568 F.2d 1139, 1147 (5th Cir. 1978)(noting that "evidence of other accidents involving the same product is admissible if such accidents occurred under the same or substantially similar [circumstances] as that involving the plaintiff.")(emphasis added). Thus, the Recall Notice is irrelevant and not evidence of a defect in the product at issue in this case.

The plaintiff also submits medical records from her treating physicians to support her contention that the NexGen LPS knee was defective. But, as a matter of law, records and testimony from the plaintiff's medical providers are insufficient to prove that a

4

defect existed in her NexGen LPS knee and that this unidentified defect caused her injuries.  Instead, in order to survive summary judgment, a plaintiff must present expert testimony that the product is defective, and that the defect was the medical cause of the plaintiff's injuries.  Hammond v. Coleman Co., Inc., 61 F.Supp.2d 533, 542 (S.D. Miss. 1999), aff'd, 209 F.3d 718 (5th Cir. 2000)(granting summary judgment because plaintiff "offered no expert testimony relating to manufacturing defects, design defects, or warning or instruction defects, which precludes recovery on those allegations")(internal citations omitted); Williams v. Bennett, 921 So.2d 1269, 1269 (Miss. 2006)(affirming summary judgment where plaintiff failed to proffer expert testimony proving handgun contained a defect).

The plaintiff has not properly designated any expert witnesses nor provided any expert reports as required by Federal Rule of Civil Procedure 26(a)(2)(B).  Zimmer's experts, Dr. Kurtz and Dr. Baier, opine that the plaintiff's Zimmer knee replacement components were not defective, and that the plaintiff has suffered no injury caused by her components.  The plaintiff has no expert testimony to contradict Dr. Kurtz's and Dr. Baier's opinions. Because this case involves a complicated medical device, the plaintiff cannot survive summary judgment without expert opinion that the components were defective and that they caused her alleged injuries.

5

A post-operative diagnosis for Failed Right Knee Total Arthroplasty does not, without more, prove that the medical device itself was defective. Zimmer's biomedical engineering expert, Dr. Kurtz, opines that although total knee replacement generally has a very high success rate, there are known risks associated with the procedure. These risks include implant loosening and a variety of patient-related, surgeon-related, and implant-related factors, all of which can occur for a variety of reasons that are unrelated to any product defect. Kurtz Declaration, ¶¶ 18-19. In fact, in her deposition, the plaintiff expressed the view that surgeon error might have been a reason for her revision. Chatman Deposition, at 153:8-18. Furthermore, the scientific literature shows that the Zimmer NexGen LPS knee has a long and successful clinical history and is among the best performing knee replacement products in clinical use. Kurtz Declaration, ¶¶ 23, 25. Additionally, Zimmer documented the production of the NexGen LPS femoral and tibial components implanted in the plaintiff, and they were inspected, manufactured, and sterilized according to company procedures, and a review of Zimmer's complaint documentation found no systemic problems with the components plaintiff received. Id., ¶ 26. Thus, the only evidence in this case on the products liability issue demonstrates that the plaintiff's device was not defective. The plaintiff has failed to meet her burden to provide evidence to the contrary.

Zimmer's expert testimony and evidence is undisputed and affirmatively demonstrates that (1) the device at issue was not defective in design or manufacture; (2) Zimmer complied with its duty to warn consistent with the Learned Intermediary Doctrine; and (3) Zimmer never made, nor breached, any alleged warranties.

The Court therefore finds that the defendant's motion for summary judgment shall be granted, and the defendant's motion in limine is moot.

Accordingly,

IT IS HEREBY ORDERED that the defendant's motion for summary judgment **(docket entry 34)**, is GRANTED;

FURTHER ORDERED that the defendant's motion in limine **(docket entry 43)**. is MOOT.

A Final Judgment shall be entered this day.

SO ORDERED, this the 16th day of June, 2016.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE